# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **LISA MOZINGO, o/b/o C.O.M.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **6:13-cv-1440-AKK** |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social** ) | |
| **Security,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Plaintiff Lisa Mozingo ("Mozingo") brings this action on behalf of her minor son, C.O.M. ("Claimant"), pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence. Therefore, for the reasons elaborated herein, the court will affirm the decision denying benefits.

## I.  Procedural History

Mozingo protectively filed an application on behalf of Claimant for the child's Supplemental Security Income ("SSI"), alleging a disability onset date of October 22, 2002, due to Asthma and Attention Deficit Hyperactivity Disorder ("ADHD").  (R. 16, 182).  After the SSA denied his claim, Claimant requested a hearing before an ALJ.  (R. 134).  The ALJ subsequently denied Claimant's claim, (R. 127), which became the final decision of the Commissioner when the Appeals Council refused to grant review.  (R. 1-3).  Mozingo then filed this action for judicial review pursuant to 42 U.S.C. § 1383(c)(3).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner;

instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

A claimant under the age of eighteen is considered disabled if he has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which is expected to result in death, or which has lasted or is expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(C)(I). The Commissioner has developed a specific sequential evaluation process for determining whether a child claimant is

disabled. 20 C.F.R. § 416.924. The three-step process requires a child to show: (1) that he is not working; (2) that he has a "severe" impairment or combination of impairments; and (3) that his impairment or combination of impairments meet, medically equal, or functionally equal the severity of an impairment listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P ("the listings"). *See id*. To "functionally equal" a listed impairment, the claimant's impairment or combination of impairments must result in "marked" limitations in two of the six domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).[1]

## IV.  The ALJ's Decision

Applying the three-step process for determining whether a child is disabled, the ALJ concluded that Claimant is not disabled within the meaning of the Act. (R.11). Although the ALJ found that Claimant has not engaged in any substantial gainful activity since his alleged disability onset date, and suffers from severe impairments of Asthma and ADHD, (R. 14), the ALJ concluded that Claimant's impairments ultimately did not meet, medically equal, or functionally equal any of the listed impairments, (R. 13-21). More specifically, the ALJ

---

[1] The ALJ considers the child's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(I)-(vi).

found that Claimant's impairments did not meet or medically equal Listing 103.03B and that Claimant does not experience marked limitations in any of the six domains of functioning. *Id*.

### V. Analysis

Mozingo contends that the ALJ erred by finding that Claimant did not meet Listing 103.03B, and that Claimant's impairments did not functionally equal a listed impairment. *See* doc. 13 at 10-16. The court disagrees with both contentions and addresses each one in turn.

#### A. Listing 103.03B

To "meet" a listing, a claimant "must have a diagnosis included in the listings and must provide medical reports documenting that the conditions meet the specific criteria of the listings." *Wilson v. Banhart*, 284 F.3d 1219, 1224 (11th Cir. 2002). More specific to the case at hand, to meet Listing 103.03B, Claimant must establish that he has asthma with "attacks"

> occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R., Pt. 404, Subpt. P, App. 1 § 103.03B. "Attacks" are defined as "prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic

administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting." 20 C.F.R., pt. 404, subpt P., app. 1 § 3.00C.

Unfortunately for Claimant, although it is undisputed that he has asthma, Claimant has failed to establish that his asthma "attacks" rise to the level necessary to satisfy the Listing 103.03B criteria. According to the medical records, Claimant experienced three asthma attacks that required physician intervention: on December 18, 2008; on July 13, 2009; and on November 26, 2010. (R. 269, 322, 325). In pointing this out, the court does not in any way seek to diminish Claimant's symptoms. However, three incidents over a period of 23 months fail to satisfy Listing 103.03B, which requires asthma with attacks "occurring at least once every 2 months or at least six times a year."

To further support his claim, Claimant points to two emergency room visits on February 28, 2009 through March 2, 2009, and on January 21, 2010, which he seems to suggest qualify as asthma attacks. Doc. 13 at 12. Unfortunately for Claimant, the court cannot count the 2009 emergency room visit as an asthma attack because Claimant's physician ultimately diagnosed Claimant with bronchitis rather than asthma. R. 261. As for the 2010 emergency room visit, while Claimant was treated for asthma, the hospital record does not

clearly establish whether Claimant experienced an asthma "attack" with "prolonged symptomatic episodes . . . requiring intensive treatment," as defined by Listing 3.00C. In fact, the hospital record states that Claimant was not suffering from any respiratory distress during the visit, and was discharged within a few hours. (R. 248-51). However, even if both the 2009 and 2010 emergency room visits qualify as attacks,[2] this would mean that Claimant had six asthma attacks total between December 2008 and November 2010, which is still not sufficient to meet Listing 103.03B.

Finally, Claimant also points to approximately 30 incidents that required visits to a doctor purportedly "for asthma symptoms and treatment," including the December 2008 and July 2009 attacks referenced above. Doc. 13 at 12. The records show, however, that aside from the December 2008 and July 2009 attacks, Claimant required treatment for asthma during only five of these doctors visits. (R. 315, 320, 325, 400, 406). Unfortunately, nothing in the record indicates that Claimant was having an "attack" during any of these five visits. *Id*.

Based on the record before this court, Claimant only experienced three asthma attacks. Accordingly, Claimant has failed to meet the Listing 103.03B

---

[2] The 2009 emergency room visit would qualify as two attacks since Claimant's hospital stay spanned over three days. *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 103.03B ("Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks . . . .")

criteria, which requires asthma with attacks occurring once every two months or six times a year.

### B. Impairment that functionally equals a listed impairment

In support of his contention that his asthma and ADHD impairments functionally equal an impairment in the listings, Claimant argues that he experiences marked limitations in domains one – acquiring and using information, two – attending and completing tasks, three – interacting and relating with others, five – caring for himself, and six – health and physical well-being. Doc. 13 at 14. Based on a review of the record, the court finds that the ALJ did not err in finding that Claimant does not experience marked or severe limitations in any of these domains.

#### 1. Domains one, two, and three

With respect to domains one and two, Claimant relies heavily on the record showing that he missed 22-27 days of school each school year in 2008, 2009, and 2010, and Mozingo's testimony that Claimant's grades have declined and that Claimant's teacher complains about his behavior "about every two weeks." Doc. 13 at 14-15. Next, with respect to the third domain, i.e., interacting and relating with others, Claimant merely contends that he has marked limitations "due to the ADHD" and offers no support for the contention. *Id.* Unfortunately for Claimant,

the evidence belies his contentions regarding these three domains. For example, Claimant's second grade teacher reported that Claimant had "no problems" acquiring and using information, attending and completing tasks, or relating and interacting with others at school. (R. 194, 195). The teacher also indicated that Claimant earned passing grades in all subjects. (R. 193). Indeed, Mozingo testified before the ALJ that Claimant has never failed a subject in school, and that he makes "A" letter grades in some subjects. (R. 112). The court finds that these facts provide substantial evidence to support the ALJ's finding that Claimant does not experience marked limitations in the first three domains.

    2. <u>Domains five and six</u>

In support of his contention that he can satisfy domains five and six, caring for himself and health and physical well-being, Claimant merely argues that he has severe limitations "due to the repeated medical interventions, ER visits and missed days from school." Doc. 13 at 16. To satisfy domain five, Claimant must show that his impairment limits his capacity to independently complete day-to-day activities, such as dressing and bathing. 20 C.F.R. § 416.926a(k)(2)(iv). Claimant has made no such showing. Likewise, Claimant has not made the requisite showing for domain six, which addresses how recurrent illness, the side effects of medication, and the need for ongoing treatment affect the child's health

and sense of physical well-being. *See* 20 C.F.R. § 416.926a(l). Frequent illness may amount to a marked limitation if a child has episodes of illness that occur on average three times a year, each lasting two weeks or more. 20 C.F.R. § 416.926a(b)(2)(iv). While Claimant seems to suggest that his frequent visits to the doctor and the emergency room establish a marked limitation under domain six, doc. 13 at 15-16, Claimant's medical records do not include any episodes of illness that lasted two weeks or more. Therefore, there is no evidence here to support a finding in favor of Claimant on domain six.

Because Claimant has not demonstrated that he experiences marked limitations in at least two domains of functioning, the court finds that the ALJ did not err in concluding that Claimant's impairments do not functionally equal a listed impairment.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Claimant is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 2nd day of October, 2014.

>_____
> **ABDUL K. KALLON**
> UNITED STATES DISTRICT JUDGE